**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| MONTROSE PARKWAY | * | |
| ALTERNATIVES COALITION, *et al.,* | * | |
| | | |
| Plaintiffs, | * | |
| | | |
| v. | * | Civil Action No. AW-05-3096 |
| | | |
| U.S. ARMY CORPS OF | * | |
| ENGINEERS, *et al.*, | * | |
| | | |
| Defendants. | * | |
| | * * * * * | |

## MEMORANDUM OPINION

This case stems from the construction of the Montrose Parkway, a proposed four-lane highway that will cross Montgomery County.  Plaintiffs in the case are Montrose Parkway Alternatives Coalition, a Maryland nonprofit organization established to educate residents of Montgomery County, Maryland about the environmental and quality of life issues surrounding the planned Montrose Parkway, as well as Steve Goldstein, Manuel and Nancy Zymelman, residents of the Montrose Woods development and Steve Epstein, a resident of Luxmanor (collectively, "Plaintiffs").  Defendants are the United States Army Corps of Engineers ("U.S. Army Corps"), a federal agency responsible for regulating all dredging and filling activities in United States waters, Col. Robert Davis, Baltimore District Commander of the U.S. Army Corps, and Lt. General Carl A. Strock, Chief Engineer of the U.S. Army Corps (collectively, "Defendants").  Plaintiffs' Complaint alleges that Defendants violated the National Environmental Policy Act and the Clean Water Act by: (1) failing to consider the impact of the construction of the Montrose Parkway West as a whole and the cumulative impact of the proposed new interchange between the Montrose Parkway and

Maryland Route 355 and (2) failing to provide the public either with notice or an opportunity to comment on its Environmental Assessment prior to a Finding of No Significant Impact ("FONSI"). Currently pending before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [2].  The Court heard from the parties in this action during a telephonic conference on November 16, 2005.  Montgomery County, a potential intervener in the case, also participated in the conference.  For the reasons stated below, the Court will deny Plaintiffs' Motion for Temporary Restraining Order, but will hold a hearing to determine whether to enter a preliminary injunction.

<b><u>FACTUAL & PROCEDURAL BACKGROUND</u></b>

Montrose Parkway is a proposed four-lane divided highway to connect I-270 and Veirs Mill Road.  As planned, the Montrose Parkway would be constructed in three phases (the "Montrose Parkway project").  The first segment, referred to as the Montrose Parkway West, would consist of a new four-lane divided highway between Tildenwood Drive and Old Old Georgetown Road.  The second segment, referred to as the Maryland Route 355/Montrose Interchange, would connect the Montrose Parkway West to Randolph Road.  Finally, the third segment, referred to as Montrose Parkway East, would consist of a new four-lane divided highway between Randolph Road and Veirs Mill Road.

On March 22, 2004, the Montgomery County Department of Public Works and Transportation ("Montgomery County") submitted a joint federal/state application to the Maryland Department of the Environment and U.S. Army Corps to proceed with the Montrose Parkway West. This application sought a Nontidal Wetlands permit from the Maryland Department of the Environment.  The application also sought a Clean Water Act Section 404 permit from the Army

2

Corps under the terms of the Maryland State Programmatic General Permit, which allows projects that have a minimal impact on the environment and impact of less than one acre of wetlands to proceed without further review under the National Environmental Policy Act.

The U.S. Army Corps held a public hearing regarding Montgomery County's application for a Maryland Department of the Environment and U.S. Army Corps' permit for the Montrose Parkway West. The U.S. Army Corps stated it would use the public comments from the hearing in the preparation of an Environmental Assessment for the Montrose Parkway West.

On September 7, 2005, the U.S. Army Corps issued a Section 404 permit that authorized Montgomery County to discharge fill into .94 acres of United States jurisdictional waters to construct a crossing of a perennial tributary to Old Farm Creek and a crossing of an unnamed intermittent tributary. The permit included an Environmental Assessment, Statement of Findings, and review and compliance determination under the U.S. Army Corps' Section 404(b) Guidelines. The Environmental Assessment limited its analysis to the crossings of jurisdictional streams and wetlands, including aquatic resources and a limited amount of roadway approaching the two crossings. Compl. ¶ 25. In addition, the U.S. Army Corps' Environmental Assessment only considered the impact of the construction of the Montrose Parkway West, not the larger Montrose Parkway project.

Plaintiffs moved for a temporary stay of construction activity, which the Maryland Office of Administrative Hearings denied on October 17, 2005. The construction of the Montrose Parkway project has already begun.

On November 15, 2005, Plaintiffs filed a Complaint and Motion for Temporary Restraining Order and Preliminary Injunction, alleging that Defendants violated both the National

Environmental Policy Act ("NEPA") and the Clean Water Act when it issued the Section 404

permit.  The Complaint seeks injunctive relief and asks the Court to preliminarily and permanently

enjoin Defendants from issuing or reissuing any permits relating to the Montrose Parkway West

until Defendants can demonstrate compliance with NEPA and the Clean Water Act, and

implementing regulations.  Plaintiffs' Motion also alleges that "[o]n information and belief, the

County is now poised to construct a bridge over Old Farm Creek . . . which will result in the

irreparable destruction of federally-protected wetlands."  While Plaintiffs' Complaint avers that

Defendants violated NEPA and the Clean Water Act, the motion for preliminary injunction focuses

solely on the likelihood of success of their NEPA claims.

## STANDARD OF REVIEW

To determine the appropriateness of injunctive relief under Rule 65 of the Federal Rules of

Civil Procedure, the four-part test established in *Blackwelder Furniture Co. v. Seileg Mfg. Co., Inc.*,

550 F.2d 189 (4th Cir. 1977) requires courts in this Circuit to weigh:

> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;
> (2) the likelihood of harm to the defendant if the requested relief is granted;
> (3) the likelihood that the plaintiff will succeed on the merits; and
> (4) the public interest.

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811-12 (4th Cir. 1991) (internal

quotations and citations omitted); *see Blackwelder Furniture Co. v. Seileg Mfg. Co., Inc.*, 550 F.2d

189, 193-95 (4th Cir. 1977).

The balance of harm analysis should precede any inquiry into the likelihood of success on

the merits.  *Direx*, 952 F.2d at 813.  Therefore, as a initial matter, the Court must determine whether

the plaintiff has demonstrated irreparable harm by "clear and convincing evidence" in order to

obtain relief. *Id.* at 818. If the plaintiff makes such a showing, the court must then balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. *See Scotts Co. v. United Industries Co.*, 315 F.3d 264, 271 (4th Cir. 2002); *Direx,* 952 F.2d at 812. Weighing the relative harm to the defendant against the harm to the plaintiff:

> If the balance of the hardships tips decidedly in favor of the plaintiff, then typically it will be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. But if the balance of hardships is substantially equal as between the plaintiff and defendant, then the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success.

*Scotts*, 315 F.3d at 271 (internal citations and quotations omitted). The *Direx* court has explained that where the balance of hardships does not tip decidedly or significantly in favor of the plaintiff, the plaintiff must prove "a probability (not mere possibility) of success of the ultimate trial on the merits. 'Probability of success' implies that the plaintiff must have a very clear and strong case." *Direx,* 952 F.2d at 813 (internal quotations omitted).

After balancing the harms and determining the likelihood of success on the merits, the court must analyze the final factor, the public interest. *Direx*, 952 F.2d at 814.

## DISCUSSION

Plaintiffs have asserted that they will suffer imminent harm if this Court denies their motion for a temporary restraining order. Montgomery County has begun construction on the Montrose Parkway West, and the County has indicated that it will discharge fill into .94 acres of protected wetlands at some point in the near future.

This Court also notes that the injury to Defendants and Montgomery County would be significant if this Court issues a temporary restraining order, as halting construction on the Montrose

5

Parkway would cause Defendants to suffer both economic and non-economic harms.  The Montrose Parkway project is part of one of the County's largest transportation initiatives.  Montgomery County has already started the project and would have to abandon the site if a temporary restraining order were entered.  As counsel for Montgomery County has stated, many of the roads affected by the construction of the Montrose Parkway have high incidents of traffic accidents.  As a result, Montgomery County believes that the construction of the roadway is necessary to prevent future casualties.

Balancing the hardships, this Court cannot determine whether Plaintiffs would suffer a greater harm if this Court does not enter a temporary than the harm Defendants would suffer if this Court granted Plaintiffs' motion.  In addition, both sides have made strong arguments relating to whether the U.S. Army Corps' acts violated NEPA.  Montgomery County has represented to this Court that it will not begin to fill the wetlands at issue on or before December 12, 2005.  Therefore, this Court will deny the Motion for Temporary Restraining Order, but will schedule a hearing on December 12, 2005 to consider whether to enter a preliminary injunction in this case.

## CONCLUSION

For the aforementioned reasons, the Court will DENY Plaintiffs' Motion for Temporary Restraining Order [2].  An Order consistent with this Opinion will follow.

November 17, 2005
Date

/s/
Alexander Williams, Jr.
United States District Judge

6